ALEXANDRIA HOSPITAL, et al., Plaintiffs,

v.

Otis R. BOWEN, M.D., Secretary of Health & Human Services, Defendant.

Civ. A. No. 85–C–676–R.

United States District Court, W.D. Virginia, Roanoke Division.

March 31, 1986.

---

Daniel S. Brown, Woods, Rogers & Hazlegrove, Roanoke, Va., and Margaret M. Manning, Ober, Kayler, Grimes & Shriver, Baltimore, Md., for plaintiffs.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395–1395xx, commonly known as the Medicare statute. The plaintiff hospitals continue their challenge to the validity of a regulation promulgated by the Department of Health & Human Services ("HHS") in 1979 governing reimbursement to hospitals for costs of malpractice insurance incurred rendering services to Medicare patients. On December 30, 1985 this court entered partial summary judgment on behalf of the plaintiff hospitals. The case is now before the court on defendant's motions to reconsider the grant of partial summary judgment and to dismiss the complaint for lack of subject matter jurisdiction. For the reasons set forth below, defendant's motion to reconsider is granted and the court's order of December 30, 1985 is vacated. In addition, defendant's motion to dismiss will be granted.

## BACKGROUND

This is another chapter in the by now familiar saga of hospitals seeking to recover the costs of malpractice insurance incurred in rendering services to Medicare patients. The controversy stems from the HHS regulation governing reimbursement of malpractice costs attributable to Medicare patients, 42 C.F.R. 405.452(a)(1)(ii) (1985). At last count, more than twenty-six district courts, including this one, *see Bedford County Memorial Hospital v. Heckler*, 583 F.Supp. 367 (W.D.Va.1984), *aff'd* 769 F.2d 1017 (4th Cir.1985), had invalidated the 1979 malpractice regulation.[1]

---

1. A new proposed malpractice rule, based on a review of data over a six year period, has been

The case is brought as part of the Virginia Hospital Association group appeal program. In 1983, Virginia hospitals participating in the Medicare program joined together in a group sponsored by the Virginia Hospital Association and filed a group appeal for reimbursement of malpractice-related costs before the Provider Reimbursement Review Board (the "PRRB" or "Board"), as contemplated by 42 U.S.C. § 1395*oo* (b). This suit is the result of a "follow-up" group appeal in which the hospitals have attempted to recover costs incurred in subsequent cost years. The complaint states that the hospitals are appealing intermediary settlements for cost years ending in 1980, 1981, 1982 and 1983.

The hospitals allege that at the close of each fiscal year, they submitted required cost reports to their fiscal intermediaries as required by law. *See* 42 C.F.R. § 405.-406(b) (1985). They then sought administrative review of the intermediaries' settlement of their reimbursement for malpractice costs before the PRRB. The record does not indicate, however, when the appeals were first lodged with the PRRB.

After their appeals had been pending with the PRRB for some time, the hospitals on March 26, 1985 requested expedited judicial review ("EJR") from the PRRB, pursuant to 42 U.S.C. § 1395*oo* (f), with respect to malpractice insurance costs disallowed in Notices of Program Reimbursement for the cost years in issue. On April 26, 1985, the PRRB sent notice to the hospitals that it required further documentation regarding their appeal. On May 9, 1985, the hospitals allege that they provided the PRRB with all the documentation it had requested, and renewed their EJR request. PRRB records, however, do not contain the hospitals' May 9 correspondence. When the PRRB failed to respond to the hospitals' EJR request within 30 days of the May 9 letter, and the PRRB failed to respond to hospital phone calls

concerning the status of the EJR request, the hospitals filed this action on August 5, 1985 to protect their rights under 42 U.S.C. § 1395*oo* (f), which requires such actions to be brought within 60 days of the lapse of the 30-day EJR evaluation period.

Near the end of the 60-day period for filing its answer to the complaint, the defendant requested an additional 60 days to file its answer. On December 4, 1985, defendant filed an answer, admitting that jurisdiction exists in this court under 42 U.S.C. § 1395*oo* (f) for the claims of almost all the hospitals. Only with respect to the claims of Arlington Hospital, Culpepper Memorial Hospital and Mary Immaculate Hospital did the defendant contest jurisdiction, alleging their failure to exhaust administrative remedies. It is now clear, however, that defendant's answer was formulated without seeing the PRRB records of the hospitals' claims, because those records were lost until sometime in January, 1986.

On December 27, 1985, the hospitals filed a motion for partial summary judgment based upon the binding precedent of *Bedford County Memorial Hospital v. Heckler*, 769 F.2d 1017 (4th Cir.1985). On December 30, 1985, before the defendant had an opportunity to respond to the hospitals' motion, the court entered partial summary judgment for plaintiffs and directed the parties to confer and report within 20 days concerning the only jurisdictional issues joined by the pleadings: whether the three hospitals named above were properly before the court because they had "self-disallowed" the costs at issue in their cost reports.[2]

Counsel had several telephone conferences on the subject set forth in the court's order of December 30. During these conferences, counsel for the defendant informed plaintiffs' counsel that the PRRB's Legal Advisor had been and was still unable to find the files in this case. The hospitals then supplied defendant with nar-

---

published. *See* 50 Fed.Reg. 25,178 (June 17, 1985). This rule would apply to cost reporting periods beginning on or after July 1979.

**2.** The three named hospitals had submitted their cost reports to their financial intermediaries in accordance with the challenged regulation, rather than in the manner of the other hospitals.

rative descriptions of the jurisdictional facts on January 13, 1986 and offered to make available any other documents he might need. Finally, at some point after receiving the hospitals' description of the jurisdictional facts in this case, defendant's counsel received the PRRB records relating to the hospitals' claims.

On February 4, 1986, the hospitals filed a motion for entry of a final order, along with a proposed stipulation of facts. On February 14, 1986, defendant filed the motions currently before the court. Defendant urges this court to reconsider the grant of partial summary judgment and to dismiss the complaint for lack of jurisdiction.

## ANALYSIS

### I. The Motion to Reconsider

■ The court will first consider defendant's motion to reconsider its grant of partial summary judgment. For the reasons set forth below, defendant's motion to reconsider is granted, and this court's order of December 30, 1985 granting partial summary judgment to the hospitals is vacated.

Rule 60(b) of the Federal Rules of Civil Procedure permits this court to relieve a party from a final judgment or order, on such terms as are just, for a variety of reasons. Rule 60(b)(1) specifically permits this court to grant relief for mistake, inadvertence, surprise or excusable neglect. In order to prevail on a motion under Rule 60(b), the Fourth Circuit has stated that a movant must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party and exceptional circumstances. *Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir.1984). Once the movant has made such a showing, he must proceed to satisfy one or more of the rule's six grounds for relief, such as Rule 60(b)(1).

The court is satisfied that *Werner*'s preliminary concerns have been met by the defendant in this case. The court notes that the defendant filed for relief six weeks after the court's grant of partial summary judgment, and within a month after the

PRRB located its records of the hospitals' claims and supplied them to defense counsel. Defendant's motion was clearly within a reasonable time of the court's December 30, 1985 order. As will be demonstrated below, defendant has established a meritorious defense in this action. The court's lack of jurisdiction over the subject matter of the action not only forbids a grant of partial summary judgment in favor of the hospitals, but demands dismissal of the action. The only prejudice the hospitals could assert is that present when any judgment is vacated: the protraction of proceedings and the time and expense of those proceedings. The court's reconsideration does not affect the right of any third parties, and in fact, does not preclude the hospitals' eventual recovery of their malpractice costs, if they are entitled to them.

Finally, the court is convinced that the circumstances surrounding this case make it one appropriate for reconsideration under Rule 60(b). With the invalidation of the regulation at issue in this suit by federal courts nationwide, the PRRB has been swamped with a veritable avalanche of hospital reimbursement claims. The PRRB has not been able to handle the reimbursment claims. The hospitals characterize the PRRB as a "quicksand" of inexplicable delays, lost files and unreturned phone calls. It is not surprising, therefore, that in the crush of processing these claims, the PRRB apparently misplaced the records regarding the claims of the hospitals in this case. Despite diligent efforts by defense counsel, he was unable to secure the pertinent records until after the court's grant of partial summary judgment. When the records were finally located, they were promptly analyzed. Given the PRRB's current state of disarray, the lack of prejudice to the hospitals, the diligence of defense counsel and the importance of a correct determination of the hospitals' entitlement to malpractice insurance cost reimbursement, the court believes that the circumstances are sufficiently exceptional to warrant relief under Rule 60(b).

Further, the court thinks this case falls logically within the scope of Rule 60(b)(1). As the discussion above makes clear, the chaotic situation at the PRRB left defense counsel without the records necessary to actually defend the case. When it became apparent that the PRRB could not produce the pertinent records in time for defendant's answer to the hospital's complaint, defense counsel obtained a two-month extension of time to answer. In these additional two months, the PRRB still could not find the records. Defense counsel did not have the PRRB records to rebut the hospitals' motion for partial summary judgment, and was unable to respond to the hospitals' motion. This was all despite diligent effort on the part of defense counsel to obtain the records. While the court's attention has not been drawn to any case that has considered this situation previously, the court feels that the defendant is entitled to relief on the grounds of mistake, inadvertence, surprise or excusable neglect. Accordingly, defendant's motion to reconsider is granted, and the court's order entering partial summary judgment for the hospitals is vacated.

## II. The Motion to Dismiss

The defendant contends that the case must be dismissed because the court lacks jurisdiction over the subject matter of the hospitals' claims at this time. In their complaint, the hospitals assert jurisdiction in this court under both 28 U.S.C. § 1331 and 42 U.S.C. § 1395oo (f). Because the court agrees that it lacks subject matter jurisdiction at this time, defendant's motion must be granted.

### A. Jurisdiction Under 28 U.S.C. § 1331

■ The court will first consider the hospitals' claim that this court has jurisdiction under 28 U.S.C. § 1331. Case law makes clear that this court does not have jurisdiction over the hospitals' claims under the general federal jurisdiction statute. Just as the Supreme Court has interpreted 42 U.S.C. § 405(h) as a bar to § 1331 jurisdiction over Social Security Act claims in most instances, *see Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 2463, 45 L.Ed.2d 522 (1975) and *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the Fourth Circuit has determined that the Medicare statute, 42 U.S.C. § 1395oo, specifies the only route of judicial review of Medicare provider reimbursement claims. *Hopewell Nursing Home, Inc. v. Schweiker*, 666 F.2d 34, 37–38 (4th Cir.1981), *appeal after remand, Hopewell Nursing Home v. Heckler*, 784 F.2d 554 (4th Cir. 1986). Since "[f]ederal jurisdiction over provider reimbursement disputes is limited to that specifically supplied by the Medicare Act itself ...," *id.*, the hospitals cannot get jurisdiction in this court under 28 U.S.C. § 1331.

### B. Jurisdiction Under 42 U.S.C. § 1395oo

■ The court will next consider defendant's assertion that the court currently lacks jurisdiction under the Medicare statute, 42 U.S.C. § 1395oo. The defendant asserts that this court lacks jurisdiction because the hospitals have not fully exhausted their administrative remedies before the PRRB, as required by § 1395oo (f). Without an initial jurisdictional determination by the PRRB, defendant asserts, the PRRB is powerless to consider an EJR request. The defendant therefore argues that while the PRRB failed to respond to the EJR request within the statutorily-required 30 days, the hospitals cannot be said to have exhausted their administrative remedies, because the PRRB never made a determination of its jurisdiction over the hospital claims involved in this suit. The hospitals, on the other hand, suggest that defendant cannot be heard to complain of the absence of a PRRB jurisdictional determination because the PRRB failed to respond to their EJR request within the statutory time period. For the reasons set forth below, the court agrees with the defendant.

#### 1. The Current Statutory and Regulatory Scheme

In order to evaluate the parties' arguments, it will be helpful to review the

scheme for settlement of Medicare malpractice insurance cost reimbursement. Medicare consists of two basic components: Part A (42 U.S.C. §§ 1395c–1395i–2), which provides reimbursement for specified hospital, extended care and home health services; and Part B (42 U.S.C. §§ 1395j–1395w), which covers reimbursement for physician services. This action involves only Part A. Under Part A, eligible beneficiaries obtain health care services from "providers of services," such as the hospitals here, which choose to participate in the program. The providers are reimbursed directly by the government, usually through private organizations such as the Blue Cross Association, which act as "fiscal intermediaries" under contract with HHS. See 42 U.S.C. § 1395h.

Prior to October 1, 1983, during the periods at issue, Part A reimbursement was based upon the lesser of the provider's "reasonable cost" of rendering covered services or its "customary charges" with respect to those services. See 42 U.S.C. § 1395f(b).[3] Reasonable cost is broadly defined by the Medicare statute, 42 U.S.C. § 1395x(v)(1)(A), and, under the statute, is determined more specifically in accordance with regulations promulgated by the Secretary. See 42 C.F.R. § 404.401, et seq. (1985).

Malpractice insurance costs are currently reimbursed according to a claims-paid formula, whereby a hospital is reimbursed according to the ratio of its malpractice claims paid to Medicare patients compared to its malpractice claims paid to all patients (including Medicare patients). See 42 C.F.R. § 405.452(a)(1)(ii) (1985). If a provider has had no malpractice loss experience, a national ratio is used to apportion Medicare's share of the provider's malpractice costs. Id. It is this regulation that the hospitals have successfully challenged in earlier litigation, see Bedford, 769 F.2d 1017, and that they seek to challenge now.

The actual determination of the amount of reimbursement due to a provider is made by the fiscal intermediary in a Notice of Program Reimbursement ("NPR"), based on the "cost report" submitted by the provider at the close of each fiscal year. See 42 C.F.R. § 405.454(f) (1985). For cost reporting years ending after June 30, 1973, if a provider disagrees with the intermediary's "reasonable cost" determination, it may obtain an administrative hearing before the PRRB for controversies involving $10,000 or more, by requesting a hearing within 180 days of receipt of the NPR. 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1835 (1985).[4] The PRRB is authorized to make an independent determination of the validity of the intermediary's action under the statute and regulations. 42 U.S.C. § 1395 oo (d).

The PRRB processes claims by first determining whether it possesses jurisdiction to consider the provider's appeal. Once it determines that all jurisdictional prerequisites have been met, the provider is given a hearing. See 42 C.F.R. §§ 405.1835–1873 (1985). The PRRB's decision with respect to reimbursement is the final agency action unless HHS, within 60 days after the provider is notified of the PRRB's decision, decides to review the PRRB's decision.[5] 42 U.S.C. § 1395oo (f)(1). If a provider is dissatisfied with the outcome of its appeal, the provider may obtain judicial review of the PRRB's decision, or HHS's reversal, affirmance or modification thereof, by timely filing an action in the United States District Court for the appropriate judicial district. 42 U.S.C. § 1395oo (f)(1).

---

**3.** The Medicare reimbursement system has been fundamentally altered for cost years beginning after October 1, 1983. See 42 U.S.C. § 1395ww(d).

**4.** A group of providers may also obtain a hearing before the PRRB if the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in question is in the aggregate $50,000 or more. 42 U.S.C. § 1395oo (b).

**5.** The Secretary of HHS has delegated the authority to review the PRRB's decisions to the Administrator of the Health Care Financing Administration ("HCFA"), who has in turn delegated that authority to the HCFA's Deputy Administrator.

In 1980, Congress amended the judicial review provisions for decisions of the PRRB by expressly authorizing a provider to obtain immediate judicial review of regulatory or statutory issues, arising in the context of a reimbursement claim, which the PRRB lacks authority to decide. Congress enacted this provision because of its concern with lengthy delays experienced by providers who were forced to challenge the legality of a rule before the PRRB, with no hope of gaining relief from the Board, before going to a court which could give them the relief sought. *See* H.R.Rep. No. 96–1167, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5757. As Congress noted,

> The effect of [the old] process has been to delay the resolution of controversies for extended periods of time and to require providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit ... [This revision] addresses this problem by giving medicare providers the right to obtain immediate judicial review in instances where the Board determines it lacks jurisdiction to grant the relief sought.

*Id.*, *reprinted in* 1980 U.S.Code Cong. and Ad.News at 5757.

As amended, § 1395oo (f)(1) permits a provider to obtain EJR under the following circumstances:

> *If a provider of services may obtain a hearing under subsection (a)* [of this Section] and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matters in controversy contained in such request for a hearing.

*Id.* (emphasis added). The statute contains no provision for appealing a decision by PRRB denying EJR.

HHS, in accord with 42 U.S.C. § 1395oo (e), has promulgated regulations that set forth how the PRRB processes requests for EJR. The regulations state that the PRRB must determine whether the provider seeking EJR is entitled to a hearing under § 1395oo (a) before evaluating the provider's EJR request. 42 C.F.R. § 405.-1842(b)(2) (1985). Thus, the regulations require the PRRB to evaluate its jurisdiction over a provider's claim before considering the EJR request. Indeed, the regulations further state that a provider's EJR request cannot be considered to be filed with the PRRB, nor can the 30-day time period during which the PRRB is required to make an expedited review determination begin, until such time as the PRRB accepts jurisdiction over the provider's appeal. 42 C.F.R. § 405.1842(b)(3) (1985).

### 2. The Controversy

In the instance case, the hospitals filed their EJR request on March 26, 1985. At no time prior to that date had the PRRB made a determination of its jurisdiction over the hospitals' claims. Nor was a jurisdictional determination made after the EJR request was filed. In fact, as the matter stands before this court today, the PRRB has yet to make a jurisdictional determination of the hospitals' claims. For this reason, the defendant asserts, the hospitals' EJR request has never been considered to be before the PRRB, and the PRRB's failure to respond to the hospitals' EJR request within the statutory time period does not permit the instant suit.

The hospitals respond that the PRRB certainly had begun to consider their EJR request, and point to the PRRB's letter of April 26, 1985 requesting information regarding the claims as evidence of the con-

sideration. Careful examination of the April 26 letter, however, refutes the hospitals' argument. The letter makes no reference to the filing of the EJR request in March. Rather, the letter clearly states that no further processing of the case could take place because the providers' entitlement to a hearing had not been established. The PRRB had not yet determined whether it had jurisdiction over the hospitals' appeal.

The hospitals further argue that the Congressional intent to expedite judicial review of legal challenges to Medicare reimbursement formulas would be defeated by enforcement of the HHS regulation implementing § 1395oo (f)(1). The hospitals note that the statute clearly requires the PRRB to make a determination on an EJR request within 30 days from the time the PRRB receives all the documentation needed to process the request. The court believes, however, that the hospitals' argument misconstrues the EJR provision and cannot prevail.

The court begins by observing that the relevant portion of § 1395oo (f)(1) authorizes a provider to request EJR "[i]f a provider of services may obtain a hearing under subsection (a)...." Thus, the statute itself suggests that an EJR request need not be considered before the PRRB determines it has jurisdiction over an appeal. Moreover, the legislative history makes clear that in enacting the EJR provision, Congress sought solely to expedite resolution of the *legal* controversies in Medicare reimbursement appeals. *See* H.R.Rep. No. 96–1167, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 5757. The legislative history does not in any way suggest that the PRRB need no longer be concerned with its jurisdiction to hear appeals involving EJR requests. Thus, it is plain that Congress did not intend to abolish the requirement that the PRRB have jurisdiction over an appeal before it grants relief. The hospitals will not be heard to argue that the requirement of 30-day evaluation of EJR requests somehow does away with the need for a jurisdictional determination.

Nor will the hospitals be heard to argue that the filing of an EJR request requires the PRRB to determine its jurisdiction over an appeal *and* respond to the EJR request within 30 days. Such an argument confuses what are in reality two separate analyses: jurisdiction and EJR. The jurisdictional analysis determines whether the PRRB may consider a provider's appeal. The EJR inquiry, on the other hand, determines whether a party properly before the PRRB raises issues which must be resolved before a court rather than the Board. The language·of the statute supports this distinction. EJR requests relate to the authority of the PRRB to decide questions of law, not whether an appeal is properly before them. While Congress has clearly imposed a 30-day limit on the PRRB's evaluation of EJR requests, no such limits have been placed on the PRRB's evaluation of its jurisdiction. In the absence of such a Congressional limitation, this court is unwilling to enforce one.

The court is also unconvinced that Congress meant to require evaluation of EJR requests within a 30-day time frame when the PRRB has not made a jurisdictional determination. It makes no sense to require the PRRB to evaluate an EJR request they might never reach if the appeal is not properly before the Board. Thus, the hospitals' argument that the PRRB absolutely must make an EJR determination within 30 days of document receipt is without merit.

These conclusions are buttressed by strong practical considerations. Acceptance of the hospitals' position that EJR requests supersede jurisdictional determinations leads to two equally unsatisfactory conclusions. The first is that jurisdictional determinations need never be made in cases where EJR requests are filed before a jurisdictional determination is reached. The court is unwilling to accept the notion that parties unable to meet jurisdictional requirements before the PRRB could nonetheless prevail in federal court merely by filing an EJR request. The second is that

federal trial courts would be forced to resolve jurisdictional disputes. Not only is this a task for which the courts are ill-suited, but it is a task which Congress has assigned to the PRRB.

It would be equally unsatisfactory if this court accepted the hospitals' argument that the filing of an EJR request triggers a requirement that the PRRB make a jurisdictional determination in thirty days in conjunction with the EJR evaluation. While thirty days may be a reasonable limit for the PRRB's review of an EJR request (involving legal issues), thirty days is not necessarily a reasonable period within which to resolve the factual issues determining the Board's jurisdiction. This is particularly true in a group appeal such as the instant case, which involves more than one hundred claims. Moreover, requiring the PRRB to complete both inquiries at the same time could actually frustrate Congressional intent to expedite judicial review in appropriate cases. The PRRB, faced with the prospect of conducting both EJR review and the jurisdictional inquiry in the same brief period, might begin routinely denying EJR requests in cases where they were warranted simply to ensure jurisdictional requirements were met in appeals involving EJR requests. Since providers cannot appeal denial of EJR requests, the providers would be worse off then they were prior to the 1980 amendment to § 1395oo (f)(1).

In conclusion, the court feels that the HHS regulations regarding the processing of EJR requests, 42 C.F.R. § 405.1841(b)(2) & (3), reasonably implement § 1395oo (f)(1). The court believes that a jurisdictional determination of the hospitals' appeal was necessary before the PRRB could be required to evaluate their EJR request. Since the PRRB was not required to consider the EJR request at the time it was filed, the Board's failure to meet the 30-day deadline cannot give the hospitals the right to appeal to this court at this time. In short, this court lacks jurisdiction under § 1395oo (f)(1) because the hospitals have failed to exhaust their administrative remedies.

## CONCLUSION

For the foregoing reasons, the defendant's motion to reconsider is granted, and the court's grant of partial summary judgment is vacated. In addition, since the court lacks jurisdiction of the subject matter of this case, the defendant's motion to dismiss is granted.

## ORDER

In accordance with defendant's motion, it is hereby

## ORDERED

that the accompanying memorandum opinion is hereby filed in the place and stead of the memorandum opinion entered on March 14, 1986, and the memorandum opinion entered on March 14, 1986 shall be of no further force or effect.