**MINNESOTA HOSPITAL ASSOCIA-TION, a Minnesota nonprofit corporation, and North Memorial Medical Center, a Minnesota nonprofit corporation, and United Hospital, a Minnesota nonprofit corporation, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**Otis R. BOWEN, in his capacity as Secretary of Health and Human Services, Defendant.**

**Civ. No. 4–87–16.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 29, 1988.

William J. Keppel and Donald S. Franke, Dorsey & Whitney, Minneapolis, Minn., for plaintiffs.

Gerard Keating, Office of Gen. Counsel, Health Care Financing Div., Baltimore, Md., and Robert M. Small, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

DIANA E. MURPHY, District Judge.

Plaintiffs North Memorial Medical Center and United Hospital brought this action on their own behalf and on behalf of 114 hospitals.[1] The action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395–1395xx (the Medicare statute). The plaintiffs challenge the amount and method of calculating Medicare reimbursement of the hospitals' malpractice insurance premiums from 1979 through 1986. Defendant Otis R. Bowen, Secretary of the Department of Health and Human Services (the Secretary), is named in his capacity as ultimate administrator of the Medicare Program. Jurisdiction is alleged pursuant to 28 U.S.C. § 1331, and the Medicare Act, 42 U.S.C. § 1395 *et seq.* Plaintiffs seek a declaratory judgment that a 1986 administrative rule governing the method of calculating Medicare reimbursements to hospitals does not apply to their claims for reimbursement. They also seek an order that the Secretary recalculate reimbursements under the procedure which was in effect before July 1, 1979. Defendants seek dismissal of plaintiffs' claims, or in the alternative, a remand to an administrative agency. Presently before the court are cross motions for summary judgment on all issues.[2]

*Background*

Plaintiffs challenge the amount and method of calculating reimbursements to hospitals for medical malpractice liability insurance which they paid between 1979 through 1986. The general principle which guided Medicare reimbursements during that period was that neither the hospitals nor Medicare should subsidize the other.

---

1. The court was informed before the hearing that some of the hospitals have settled their dispute and that 37 hospitals are still interested in this action.

2. The parties agree that there are no disputed issues of material fact and that the entire matter should be resolved on these cross motions.

Rather, each should bear its fair share of the costs for providing medical care.[3]

The Medicare regulations in dispute deal with expenses attributable to hospital "cost centers." The regulations divide reimbursable hospital expenses into two categories—direct and indirect. Under the category of direct expenses, Medicare reimburses hospitals for their reasonable costs directly attributable to each Medicare patient. At the time in question indirect costs included such items as costs for admissions, billing, workers compensation, fire, and accident insurance, and medical malpractice insurance premiums paid by the hospital. In Medicare nomenclature these indirect expenses are termed "general administrative and ancillary costs" (G & A costs).

Under the pre–1979 regulations, Medicare paid a share of those G & A costs proportionate to the number of Medicare patients to total patients during the hospital's fiscal year. A hospital would generally be entitled to reimbursement of 40% of its G & A costs, for example, if during one fiscal year 40% of all hospital patient days were attributable to Medicare patients.

In 1979, the Secretary proposed revision to the malpractice insurance premium reimbursement scheme. The new rule was adopted in 1980. 42 C.F.R. § 405.452(b)(a)(ii) (1980) (1979 malpractice rule). The 1979 malpractice rule singled out malpractice insurance premiums and required that they be reimbursed apart from G & A costs. Instead, they were to be reimbursed based upon the ratio of malpractice losses attributable to Medicare patients, against total malpractice losses. See 42 C.F.R. § 405.452(b)(1)(ii) (1980). The effect was lower reimbursements, since Medicare patients consistently have fewer malpractice claims than other patients.

The 1979 rule was challenged in several actions. Ultimately it was ruled invalid by several circuit courts of appeal, including the Eighth Circuit. See Menorah Medical Center v. Heckler, 768 F.2d 292 (8th Cir. 1985). In 1985 the Secretary published a notice of proposed rulemaking to supercede the 1979 malpractice rule. 50 Fed.Reg. 25, 1978 (June 17, 1985) (1985 Proposed Rule). This was followed by an interim final rule, which the Secretary claims was based on the proposed rule and on comments received from interested persons. 42 C.F.R. § 405.457 (1985) redesignated § 413.56 (1986) (the 1986 malpractice rule). The rule applies retroactively to all medical malpractice liability insurance premium reimbursements from July 1, 1979. The plaintiffs' malpractice premium reimbursements have apparently been recalculated under the new formula. Plaintiffs allege the reimbursements are still insufficient, however. They contend that the scheme set forth in the 1986 malpractice rule is as defective as the 1979 rule. They argue that the 1986 rule may not be applied retroactively to 1979, and that they should be reimbursed under the pre–1979 scheme.

The method for challenging a Medicare reimbursement is set forth in the Medicare Act, 42 U.S.C. § 1395 et seq., and the related regulations promulgated by the Secretary. The initial forum for any challenge is before the "fiscal intermediary."[4] If a Medicare provider desires to challenge the method or amount of reimbursement determined by the fiscal intermediary, it must file a timely appeal to the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo. The PRRB has no authority to revise regulations or adjudicate legal challenges. Providers have a right to judicial review of any final decision of the

---

3. In 1983, Congress dramatically revised the method for Medicare reimbursements to hospitals. See Social Security Amendments of 1983, Pub.L. No. 98–21, Title VI, 97 Stat. 149–152. The new system was phased in over a four year transition period. See generally 42 U.S.C. § 1395ww(d). The prior reimbursement system challenged here has therefore influenced reimbursements through hospital fiscal year 1986.

4. To obtain Medicare reimbursements, hospitals submit cost reports to a regional agency designated by the Secretary as the fiscal intermediary. The fiscal intermediary reviews the cost reports, makes adjustments, and issues a Notice of Amount of Program Reimbursement (NPR) to the Secretary, for payment. The intermediary in Minnesota is Blue Cross and Blue Shield of Minnesota.

PRRB, 42 U.S.C. § 1395oo (f)(1), or they make seek expedited judicial review of any dispute which involves a question of law or interpretation of regulation which is beyond the PRRB's capacity to resolve. *Id.;* *see also* 42 C.F.R. § 405.1842(b).

The plaintiff hospitals have each filed petitions for expedited review of the fiscal intermediary's calculation of their reimbursements under the 1986 malpractice rule.[5] Not all the challenges were filed together, however, and the Secretary contends that this court lacks jurisdiction over several hospitals' claims because of various deficiencies in the manner in which the claims were filed.

The parties divide the hospitals into several categories for purposes of discussing jurisdiction.[6] The categories are based upon the timing of the administrative appeals. The largest group of hospitals are termed the "1985–B hospitals." *See* plaintiffs' Appendix B. According to plaintiffs, each of these hospitals fully complied with the prerequisites of 42 U.S.C. § 1395oo (a) in appealing the fiscal intermediary's reimbursement calculations.

A second group of hospitals, "1985–A hospitals," includes three subcategories— "self-disallowing hospitals," "subsequent filing hospitals," and "single filing hospitals." Each has some alleged jurisdictional defect in bringing its appeal. *See* plaintiffs' Appendix A. "Self-disallowing hospitals" filed timely appeals to the PRRB of the fiscal intermediary's calculated reimbursement. They had not specifically disputed before the fiscal intermediary the

method for calculating medical malpractice premium reimbursements; rather, they had merely challenged the total amount of reimbursement. These hospitals first specifically challenged the 1979 malpractice rule when they came before the PRRB. "Subsequent filing hospitals" did not originally file timely appeals of the malpractice reimbursement calculations. The fiscal intermediary later recalculated their NPR's, however. Plaintiffs assert that the reconsideration created a "window" in which to file a timely appeal under 42 U.S.C. § 1395oo (a). "Single filing hospitals" neither filed timely notices of appeal, nor were provided a "window" by any subsequent adjustment of their NPR.

The third group, the "1986 hospitals," filed timely administrative appeals in 1986. *See* plaintiffs' Appendix C. Their appeals to the PRRB were denied, however, because the 1986 malpractice rule was promulgated while they were processing their appeal. The PRRB would not consider their appeal unless they first returned to the fiscal intermediary.

*Jurisdiction*

Title 42 U.S.C. § 1395oo provides the exclusive method for judicial review of a Medicare reimbursement decision. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Defendant argues that each hospital's claim has some defect under that statute which precludes this court's jurisdiction.

█ The 1985–B hospitals each timely challenged the fiscal intermediary's NPR and sought expedited judicial review.[7] The

---

5. The reimbursements were initially calculated under the 1979 malpractice rule, but were recalculated when the 1986 malpractice rule superseded it.

6. The individual plaintiffs are described as hospitals. The numerous administrative appeals combined here actually involve actions regarding separate fiscal years for various hospital cost centers. Most Medicare provider hospitals represented have more than one cost group and fiscal year involved in this dispute. Some facilities fall into different "hospital" categories for separate fiscal years. For convenience, however, the parties refer to the categories as "hospitals" rather than "hospital fiscal years" or "cost center fiscal years." The court adopts this approach also.

7. Expedited review of a fiscal intermediary's action may be obtained by the provider in the following manner:

[Providers shall] have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which such determination is rendered. If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the

Secretary asserts that the PRRB may not grant any expedited review until it first determines its own jurisdiction over the petition. *See* 42 C.F.R. § 405.1842(2). The Secretary alleges that this action by all the 1985 hospitals is premature because the PRRB has never determined its jurisdiction over the petitions for expedited review, as required by 42 C.F.R. § 405.1842. *Alexandria Hospital v. Bowen,* 631 F.Supp. 1237, 1243 (W.D.Va.1986) (regulations require PRRB to evaluate its jurisdiction before granting expedited review); *see St. Joseph's Hospital of Kansas City v. Heckler,* 786 F.2d 848, 851 (8th Cir.1986) (court's jurisdiction exists only if PRRB action is a final decision under § 1395oo ). In the Secretary's view, a ruling by the PRRB on its own jurisdiction to entertain an appeal is an absolute prerequisite to any expedited judicial review.

This is an unduly narrow interpretation of § 1395oo and of *St. Joseph's Hospital. St. Joseph's Hospital* explains that judicial review is not barred when the PRRB has rejected a claim because of a provider's failure to meet a threshold requirement. If that were so, "[t]he PRRB could effectively preclude any judicial review of its decisions simply by denying jurisdiction of those claims that it deems to be non-meritorious. Such a device would obviously thwart the salutary purposes of Section 1395oo (f)." *Id.* at 851. By that same reasoning, it would be an even greater perversion of the judicial review provisions of § 1395oo if the PRRB could avoid judicial scrutiny of the fiscal intermediary's decisions by indefinitely failing to rule on its jurisdiction over an appeal of a purely legal matter.

Here it is undisputed that for over two years the PRRB has not ruled on its jurisdiction to entertain plaintiffs' requests for expedited review. The first petition was

allegedly lost, and the second, filed on October 1, 1986, has never been resolved. Such a delay is unreasonable. Under the circumstances the PRRB's conduct should be construed as a waiver of jurisdictional defects, and the issue should be reviewed on its merits.

The Medicare regulations require that petitions for expedited review be promptly considered by the PRRB. Under 42 C.F.R. § 405.1842(g) the PRRB is required to rule on a request for expedited review within thirty days of receipt of a provider's request. The phrase "receipt of a request for expedited review" has been expanded in the regulations to be the later of either the date of actual receipt of the request, *or* "the date indicated on the [PRRB's] written notification to the provider that [it] has accepted jurisdiction." 42 C.F.R. § 405.1842(i). This latter provision does not give the PRRB authority to withhold ruling on a request indefinitely, however.

The regulations give examples of how a provider may expect to receive an expedited review determination. *See* 42 C.F.R. § 405.1845(j)(1)–(5). In each example the provider is led to expect that a determination regarding jurisdiction over a petition for expedited review will be made immediately or within thirty days of receipt of a request for additional information by the PRRB. Nowhere in the statute or regulations is there any support for the PRRB withholding a decision on jurisdiction for over two years and thus precluding judicial review.

The Supreme Court has noted that a failure by the PRRB to determine its authority to decide a provider's claim can amount to an authorization for judicial review:

> [The] predicate [to judicial review of the fiscal intermediary's action] is that

Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and to subject to review by the Secretary. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing.... 42 U.S.C. § 1395oo (f)(1).

the [PRRB] must first make a determination that it is without authority to decide the matter because the provider's claim involves a question of law or regulations. It is this determination of the Board, *or alternatively the Board's failure to act,* that triggers the right of judicial review. *Bethesda Hospital Association v. Bowen,* — U.S. ——, 108 S.Ct. 1255, 1260, 99 L.Ed.2d 460 (1988) (emphasis added, footnote omitted).

The rule permitting expedited review is designed to afford Medicare providers with timely access to the courts to resolve legal issues involved in Medicare reimbursement. Health care providers are entitled to expedient access to a forum capable of resolving issues which are beyond the PRRB's authority. The issue in dispute is not novel, nor should the jurisdiction issue still before the PRRB require lengthy and deliberate consideration by that body. The fundamental issue—validity of a malpractice premium reimbursement program—has been the source of much litigation. The legal issues have always been regarded as beyond the PRRB's authority to resolve. *See, e.g., Alexandria Hospital v. Bowen,* 631 F.Supp. at 1238, n. 1 (over 26 district courts invalidated the 1979 malpractice rule). The PRRB's failure to rule on its jurisdiction should be treated in this instance as a denial of its jurisdiction pursuant to 42 C.F.R. § 405.1842. Plaintiffs are entitled to proceed with this action.

The Secretary also alleges other jurisdictional defects in the appeals of all three categories of 1985–B hospitals. Some of those issues have been resolved in plaintiffs' favor by subsequent judicial decisions, however. The 1985–A "self-disallowing" hospitals filed timely notices of appeal to the PRRB, but did not specifically dispute malpractice premium reimbursement calculations at the fiscal intermediary level. The Secretary urges that the failure to challenge the precise reimbursement item is fatal to any subsequent appeal. That position was refuted, however, in *Bethesda Hospital Association v. Bowen,* 108 S.Ct. at 1259–60. There the Supreme Court ruled that since the fiscal intermediary has no authority to consider the validity of

challenged regulations, the challenge to regulations need not be specifically raised at that level. It is enough to raise the challenge in an appeal to the PRRB. *See Id.* 108 S.Ct. at 1260.

■ The Secretary also contests this court's jurisdiction over the 1985–A "subsequent filing" hospitals. Those hospitals did not initially file timely challenges to the fiscal intermediary's NPR within the 180 days required by the statute. The NPR's were subsequently amended by the fiscal intermediary, however. Plaintiffs allege that this opened a window to appeal all of the fiscal intermediary's determinations, including the malpractice premium reimbursements. The Secretary contends that the amended NPR's at most permit hospitals to appeal only those specific items which were adjusted. *See Athens Community Hospital, Inc. v. Schweiker,* 743 F.2d 1, 9 (D.C.Cir.1984) (provider may appeal only the portions of the reimbursement calculation which were raised before the fiscal intermediary). The view stated in *Athens Community Hospital* is contradicted, however, by *Edgewater Hospital Inc. v. Bowen,* 857 F.2d 1123 (7th Cir.1988). *Edgewater Hospital* held that the reopening of a NPR by the fiscal intermediary was a "reconsideration of all cost items challenged by the provider." *Id.* at 1137. The court also states that *Athens Community Hospital* has been "effectively overturned" by *Bethesda Hospital Association,* 108 S.Ct. at 1259, insofar as it permits the PRRB to reconsider matters not expressly claimed on a cost report or considered by the fiscal intermediary. So long as the item now disputed was contained in the cost report which was re-examined and amended by the fiscal intermediary, the provider may timely file an appeal of any item after the revised NPR is presented.

The reasoning in *Edgewater Hospital* applies well to the situation present here. The challenge which plaintiffs present is purely a legal one which is outside the fiscal intermediary's authority. The cost item in dispute—malpractice insurance premium reimbursement—was included in the

initial NPR and the subsequent revision. This legal dispute is the sort of issue which the PRRB may consider in affirming, modifying, or resolving the fiscal intermediary's decision—even though it was not specifically considered by the intermediary. The court believes that *Edgewater Hospital* states the better view, which should be adopted here. Under this approach the appeals by the 1985–A subsequent filing hospitals were timely and may proceed.

■ The 1985–A "single filing" hospitals never filed notices of appeal of the fiscal intermediary's NPR as required by 42 U.S.C. § 1395*oo* (f)(1). Plaintiffs nonetheless assert that this court has jurisdiction over those appeals. Plaintiffs make what is best termed an "equitable" jurisdiction argument. They assert that nearly every one of these hospitals filed an administrative appeal within two and one-half months of *Hadley Memorial Hospital v. Schweiker*, 689 F.2d 905 (10th Cir.1982) (hospitals must pursue administrative review before seeking judicial review of Medicare reimbursement claim). They point to the Secretary's inefficient document control and the numerous accommodations offered to the Secretary despite the lengthy delays which appear to be common at the PRRB. They argue that in light of the Secretary's methods of operating, the court should not require strict adherence to § 1395*oo* by the "single filing" hospitals.

Plaintiffs have pointed to no authority, however, which supports its theory for obtaining jurisdiction. It is well settled that this court's "jurisdiction to review claims arising under the Medicare Act exists only as expressly specified in the Act itself." *St. Joseph's Hospital*, 786 F.2d at 850 (Secretary may not extend deadline for filing appeal). Since no timely requests for expedited review were filed, the court has no jurisdiction to hear the claims of the 1985–A "single filing" hospitals, and those claims should be dismissed.

■ The 1986 hospitals each filed administrative appeals of the fiscal intermediary's NPR. The PRRB dismissed the appeals because a new rule was adopted after the fiscal intermediary had acted. (HCFA Rule 86–2).[8] It barred the PRRB from entertaining a challenge to the 1986 malpractice rule unless the issue was first raised with the fiscal intermediary. The Secretary notes that HCFAR–86–2 has now been superseded by HCFAR–87–2. The new rule permits the PRRB to hear challenges to the 1986 malpractice rule in the first instance, rather than require a remand to the fiscal intermediary. The Secretary therefore urges that the 1986 hospitals' actions be remanded to the PRRB. The Secretary contends that the PRRB would then determine its jurisdiction and decide if those claims are subject to expedited judicial review.

Plaintiffs argue that the PRRB's denial of jurisdiction based on HCFAR–86–2 is a final agency decision which makes their challenge ripe for judicial review under 42 U.S.C. § 1395*oo* (f)(1). Moreover, they claim that further remands to the PRRB would be inefficient and fruitless since the outcome is preordained. *Sioux Valley Hospital v. Bowen*, 792 F.2d 715, 724 (8th Cir.1986). (exhaustion of administrative appeal not required when it would be futile and a decision adverse to plaintiff the certain outcome).

Here no remand to the PRRB is necessary. The PRRB's denial of its jurisdiction based on HCFAR–86–2 is a final decision for which judicial review is available. *See* 42 C.F.R. § 405.1842(h); *St. Joseph's Hospital*, 786 F.2d at 851. Furthermore, forcing the 1986 hospitals to renew their petition to the PRRB would be futile. There is no telling how long the PRRB might take to determine its jurisdiction, and the issue raised—the legality of retroactive rulemaking—would require judicial resolution in any event.

*Retroactive Application of the 1986 Malpractice Rule*

■ The Secretary asserts that the 1986 malpractice rule may be applied retroactively. The rule states that "for cost reporting periods beginning on or after July 1, 1979, malpractice insurance costs must

---

**8.** Health Care Financing Administration Ruling —HCFAR–86–2.

be apportioned as set forth in this section." 42 C.F.R. § 413.56(a). The Secretary justifies applying the rule retroactively as a method of avoiding the windfall which would result if hospitals were reimbursed under the pre–1979 scheme.

Plaintiffs respond that the 1986 malpractice rule is equally as defective as the 1979 malpractice rule. Even if the 1986 malpractice rule is valid, however, they urge that it may not be applied retroactively to pre–1986 cost years. Plaintiffs therefore seek reimbursement under the pre–1979 regulations. *See Action on Smoking and Health v. Civil Aeronautics Board*, 713 F.2d 795, 797 (D.C.Cir.1983) (effect of invalid agency rule is reinstatement of the valid rule previously in force).

The parties agree that the 1986 malpractice rule was promulgated under the informal rulemaking provisions of the APA, 5 U.S.C. § 553. Plaintiffs point out that informal rulemaking is generally for prospective effect only. 5 U.S.C. § 551(4). Within the Medicare Act there is a provision for "retroactive corrective adjustments" by the Secretary to remedy any imbalance in reimbursements to provider hospitals.[9] The Secretary relies on this provision to impose the 1986 malpractice rule retroactively even though it was adopted through informal rulemaking. Plaintiffs argue that § 1395x(v)(1)(A)(ii) is not meant to permit a revision on this scale. Rather, it is meant to allow adjustment of a specific provider's reimbursement if an oversight or loophole would cause an unexpected windfall.

After the parties had submitted their briefs and argued their positions, the Supreme Court issued its opinion in *Bowen v. Georgetown University Medical Center*, —— U.S. ——, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). The Court unanimously concluded that § 1395x(v)(1)(A)(ii) of the Medicare Act

directs the Secretary to establish a procedure for making case-by-case adjustments to reimbursement payments where the regulations prescribing computation methods do not reach the correct result in individual cases. The structure and language of the statute require the conclusion that the retroactivity provision applies only to case-by-case adjudication, not to rulemaking.

*Id.* —— U.S. at ——, 109 S.Ct. at 470 (Secretary may not rely on § 1395x(v)(1)(A)(ii) as authority for retroactive rulemaking of cost-limit rules). *Bowen v. Georgetown University Medical Center* makes clear that the Secretary has exceeded his authority by applying the 1986 malpractice rule retroactively to these plaintiffs' requests for reimbursement. The 1986 rule does not apply to the cost years in dispute here. The reimbursements for each cost year at issue should instead be calculated under the pre–1979 regulations. *See Action on Smoking and Health v. CAB*, 713 F.2d at 797.

In their memoranda, plaintiffs request that the court issue a declaratory judgment that the 1986 malpractice rule was invalidly promulgated under the APA. The court need not reach that issue, however. Each of the cost years in dispute here is only affected by the 1986 rule if it is applied retroactively. Since the Secretary is prohibited from doing so, these plaintiffs are entitled to full relief without reaching the question of how the 1986 malpractice rule may be applied prospectively.

Accordingly, based on the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for summary judgment is denied as to the "single-filing" hospitals. Plaintiff's motion is granted as to all other hospitals and IT IS HEREBY DECLARED AND ADJUDGED that: Each hospital which filed a timely appeal to

---

**9.** The Medicare Act provides that the Secretary's regulations should allow reimbursement to providers of all reasonable costs necessarily incurred in the efficient delivery of health services. Those regulations shall:

provide for the making of suitable retroactive corrective adjustments where, for a provider

of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

42 U.S.C. § 1395x(v)(1)(A)(ii).

the Provider Reimbursement Review Board (PRRB) is entitled to a recalculation of its reimbursement for malpractice insurance premiums. These reimbursements shall be calculated under the formula which was in effect prior to July 1, 1979.

2. Defendant's motion for summary judgment is granted as to the claims of the "single-filing" hospitals, and the actions of those hospitals are dismissed. In all other respects defendant's motion for summary judgment is denied.

3. This matter is remanded to the Provider Reimbursement Review Board for purposes of determining the timeliness of appeals by each hospital cost unit, for each fiscal year. This court's rulings on the timeliness of the appeals of each category of hospital shall govern the PRRB's consideration of the issue. For each appeal that was timely filed the Secretary shall, within 60 days of this order, recalculate the medical malpractice reimbursement under the formula which was in effect prior to July 1, 1979, and shall pay to each plaintiff any amounts found owing.

LET JUDGMENT BE ENTERED ACCORDINGLY.